## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **OWNERS INSURANCE COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| | ) | **Case No. 2:20-CV-01563-CLM** |
| **v.** | ) ) | |
| **DONALD BRYAN BLACK,** | ) ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

A car crash left Defendant Donald Bryan Black with significant medical bills. The at-fault driver did not have enough insurance cover Black's bills, but Black had a policy with Plaintiff Owners Insurance Company that covered underinsured motorists. For reasons the parties hotly dispute, Black released the at-fault driver and his insurer, GEICO Casualty Company, from liability. Owners claims it now owes Black nothing because, by signing the release, Black violated his policy.

Black threatened to sue. Owners beat him to the punch by filing this complaint for declaratory judgment. Black sued Owners in state court 13 days later. The question presented is which court should hear the case: this federal court or the state court. For the reasons stated with, the state court is the better venue for this case, so the court **GRANTS** Black's motion to dismiss this federal action **without prejudice** (doc. 7).

# STATEMENT OF THE FACTS

## I.     The Owners Policy

Black had a $500,000 "uninsured motorist" policy with Owners. That policy defined "uninsured vehicles" to include an "underinsured motor vehicle." So if Black was injured by an insured driver whose policy limit failed to cover all of Black's resulting medical costs, the Owner's policy would kick in to cover the difference, up to a $500,000 limit.

If an underinsured driver injured Black, the policy required Black to "promptly notify [Owners] in writing of a tentative settlement between [Black] and the insurer of [the underinsured] vehicle." The same provision then gave Owners 30 days to advance payment of the tentative settlement amount to Black so that Owners could "preserve our rights against the insurer, owner or operator of [the underinsured vehicle."

## II.     The Accident & GEICO's offer

Michael Andrew Reinert caused the wreck that injured Black. Black's injuries were severe, and he needed (at least) a left shoulder arthroplasty and a multi-level cervical fusion. No one disputes the cost of these procedures is more than $25,000. But $25,000 was the limit of Reinert's policy with GEICO. Because the wreck was Reinert's fault, GEICO offered Black $25,000 (the policy limit) to settle Black's claims against Reinert.

## III. Correspondence: where the parties agree

To comply with the notice provision of Black's policy, Black's lawyer sent a letter to Owners on June 23, 2020, that told Owners about GEICO's policy limit offer of $25,000. In the letter, Black's lawyer asked if Owners wanted to "front" GEICO's settlement offer—*i.e.*, have Owners send Black/GEICO $25,000—or waive Owner's subrogation claim. Under the policy, Owners then had 30 days to front the money to preserve its subrogation claim.

More than 50 days later (*i.e.*, August 13, 2020), Owners told Black that Owners intended to "front" GEICO's settlement and requested payment instructions. Black told Owners how to pay him, and Owners sent Black a $25,000 check the next day (*i.e.,* August 14, 2020).

## IV. Correspondence & Waiver: where the parties disagree

The parties disagree about what happened next.

A. **Black** says that, on August 17, Owners' Subrogation Department sent a letter to GEICO that (a) told GEICO that Owners had advance Black $25,000 and (b) requested that GEICO resolve Owner's subrogation claim against Reinert. Later that day, GEICO told Owners that it could not reimburse Owners' $25,000 because Black had yet to sign a release, so there was no settlement.

Black says that Owners then sent his attorney a letter that requested more information and documents about the wreck. The next day (September 9), Owners

again asked GEICO to resolve its subrogation claim by paying Owners $25,000.

After receiving this second letter, Black says that GEICO told Black that Owners wanted Black to sign a release so that GEICO could repay Owners' $25,000 advance. So—because Black believed that Owners wanted him to—Black signed a release of all claims against Reinert, GEICO, and Samantha Mullins (the named insured) on September 29.

On October 2, Black's attorney sent Owners the documents and information that it had requested on September 8th. Black's attorney also made a policy limit demand. Owners responded by telling Black's attorney that, because Black signed a release of all claims on September 29, it owed Black nothing more.

B. **Owners** says that it never intended to resolve or extinguish its subrogation interest against Reinert or GEICO; it simply wanted to be reimbursed. Owners says that GEICO told Owners that it could not reimburse the $25,000 because a settlement had yet to be reached—not because GEICO needed Black to sign a release. Owners agrees that it sent a letter to Black on September 8 but says that it did not send a second letter to GEICO the next day. And Owners claims it never told Black to sign a release. Instead, Owners says that Black signed the release "without receiving any additional correspondence or communication from Owners[.]" Doc. 9 at 2.

## V.    The Lawsuits

Owners and Black sued each other. Owners struck first, filing this action for a declaratory judgment under 28 U.S.C. § 2201. *See* Doc. 1. Black is the only defendant here and declaratory judgment is the only count.

Black sued Owners, GEICO, and Reinert in state court 13 days later. *See Black v. Reinert*, *et al.*, Case No. 58-cv-2020-900819 (Shelby Co.). In his first count, Black seeks declaratory judgment about the same uninsured policy claim at issue here. But Black doesn't stop there. In Counts 2-4, Black sues Reinert for negligently and wantonly causing the accident. In Count 5, Black seeks a payout under the Owners policy. In Count 6, he alleges Owners acted in bad faith when it declined to refused to pay his full claim. In Count 7, he alleges that Owners breached a contract. And in Count 8, Black alleges that GEICO misrepresented its conversations with Owners to induce Black to sign the release.

The parties have multiple pending motions in the state case. Reinert and GEICO have moved to enforcement settlement. *Id.* (docs. 16, 45).Owners has moved to dismiss, arguing that the state court should defer to this court's ruling on Owners' declaratory judgment action. *Id.* (doc. 31). Owners' Rule 12 motion has been pending in state court for about six months, meaning the state court may be waiting for this court to rule on Black's similar Rule 12 motion.

## STANDARD OF REVIEW

Because this is a Rule 12 motion, the court accepts the allegations in Owners'
complaint as true and construes them in the light most favorable to Owners. *Lanfear
v. Home Depot, Inc.*, 697 F.3d 1267, 1275 (11th Cir. 2012). The ultimate question is
whether all of Owners' allegations, when accepted as true, "plausibly give rise to an
entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). If the facts as
pleaded could entitle Owners to relief, then the court must deny Defendant's motion
to dismiss. If, however, the court accepts all of Owners' pleaded facts as true, and
Owners still would not be entitled to relief, then the court must grant the motion.
Only the complaint, attachments to the complaint, and briefs are to be considered.

## ANALYSIS

Black advances three arguments for dismissal. First, Black argues that
Owners' complaint fails to state a claim that can entitle Owners to relief. Second,
Black argues that Owners failed to join necessary parties under Rule 19. Third, Black
argues that the court should dismiss this federal action so the state court can
adjudicate the declaratory judgment—and all other claims in this case.

As detailed below, the court agrees with the latter abstention argument. So the
court need not, and should not, comment on the merits of Black's other arguments.

## A.  Abstention Factors

The Supreme Court has held that federal district courts need not entertain a declaratory judgment action when there is a parallel state action. *Wilton v. Seven Falls Co*. 515 U.S. 277, 290 (1995). Instead, a district court must decide "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Id.* at 282.

Fortunately, the Eleventh Circuit dealt with this issue in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005). The court calls *Ameritas* 'fortunate' because of its similarities to this case. The plaintiff insurance company filed a declaratory judgment action seeking a declaration that it did not owe the defendant life insurance money after the insured apparently committed suicide. *Id*. at 1329. Forty-two days later, the federal defendant filed a complaint in state court against the insurance company and two other parties. *Id*. at 1329-30.

In other words, like this case, the state action included the same two parties as the federal action, plus more. And like this case, the state action included the same claim as the federal action, plus more. The "same plus more" mattered. In deciding to abstain, the *Ameritas* district court relied on three factors. First, the state action encompassed the complete controversy. *Id*. at 1331. Second, because the third-party litigants in the state court case were non-diverse, the court would encounter

supplemental jurisdiction problems if it tried to adjudicate the whole controversy. *Id*. Third, and perhaps most importantly, the federal declaratory action "would amount to the unnecessary and inappropriate 'gratuitous interference' with the more encompassing and currently pending state court action that was contemplated by the Supreme Court in *Brillhart* and *Wilton*." *Id*. at 1332.

The Eleventh Circuit agreed with the district court's reasoning. But in doing so, the court created a more comprehensive nine-factor balancing test for district courts to consider when balancing state and federal interests.

> (1) The strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts.
>
> (2) Whether the judgment in the federal declaratory action would settle the controversy.
>
> (3) Whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue.
>
> (4) Whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable.
>
> (5) Whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction.
>
> (6) Whether there is an alternative remedy that is better or more effective.
>
> (7) Whether the underlying factual issues are important to an informed resolution of the case.

(8) Whether the state trial court is in a better position to evaluate those factual issues than is the federal court.

(9) Whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id*. Here, most of the factors favor abstention. None favor the federal forum.

**B.      Applying the *Ameritas* factors**

The seventh factor—*i.e.*, whether the facts matter to the legal resolution—is clearly present. This case (in both its state and federal form) largely turns on whether Owners or GEICO directed Black to sign the release, against his interest. After reciting its version of events, Owners admits this in its brief to this court: "Alabama law is clear—***if the above facts are proven***, Black is not entitled to UM coverage." Doc. 9 at 2 (emphasis added). This court is in no better position to determine the facts than the state court, so the eighth factor is neutral.

Because this could be a fact-heavy case, the court cannot say that ruling on Owners' single count would settle the whole controversy (Factor #2) or serve a useful purpose in clarifying the legal relations among the four parties (Factor #3).

But above all, federalism—embodied by the first and ninth *Ameritas* factors— weighs heavily in favor of abstention. The Alabama Supreme Court (not the state legislature) created the procedure for fronting insurance settlement offers in the

context of consent-to-settle clauses in *Lambert v. State Farm Mutual Auto. Insurance Company*, 576 So.2d 160 (Ala. 1991). In fact, Owners calls the procedure the "*Lambert* advance" throughout its brief, *see* Doc. 9 at 2, 3, 4, 6, 9, 10, 11, because that's what the state courts call it:

> [T]he subrogation right that a UIM insurer protects by making a *Lambert* advance is its 'right of subrogation for sums paid by the insurer in excess of the tort-feasor's limits of liability.' The making of a *Lambert* advance does not create for a UIM insurer a right of subrogation to proceeds within a tortfeasor's liability limits. Therefore, a UIM insurer's right to recover its *Lambert* advance, which is an amount within the tortfeasor's liability limits, is not a subrogation right.

*Ex parte State Farm Mut. Auto. Ins. Co.*, 207 So. 3d 734, 739 (Ala. 2016) (internal citations omitted). And the state supreme court has ruled on the contours of the "*Lambert* advance" it created as recently as last October. *See Turner v. State Farm Mut. Ins. Co.*, 2020 Ala. LEXIS 76 (Ala. 2020).

If the "*Lambert* advance" is a state court creation, then state courts should be the ones to refine their creation. Using the language of the first *Ameritas* factor, in this case, there is great "strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts." 411 F.3d at 1332. The strength of the factor alone warrants abstention here. That other factors favor abstention too makes the court's decision only easier.

## C. Owners' counterarguments

Perhaps tellingly, Owners' does not mention *Ameritas* in its brief. Doc. 9.

Instead, Owners makes three arguments against abstention: Black's state case is "(1) illegal under Alabama's Abatement Statute, (2) reliant on the citizenship of a party that was previously released, and (3) that was filed after this action in an effort to avoid federal court." Doc. 10 at 4. While the court bases its decision on abstention as discussed in *Ameritas*, not the three arguments that Owners raises, the court briefly explains why none of Owners' arguments has merit.

First, Alabama's Abatement Statute does not bind this federal court. Federal law—not state law—governs procedure in this case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The abatement statute creates a procedural bar, so it does not affect this court's decision on abstention. *See Metro. Prop. & Cas. Ins. Co. v. Butler*, 2016 WL 2939633, at *5 (N.D. Ala. May 20, 2016). And even if the abatement statute bound this federal court, Black has not violated its plain language:

> No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times.

Ala. Code § 6-5-440. Black is not "prosecut[ing] two actions." Black is prosecuting one action (*i.e.*, the state court action); Owners is prosecuting the other (*i.e.*, the federal action). And even if Black was prosecuting both cases, the statute allows him to elect between the two. Based on his motion and briefing, Black has elected the state court action that features all parties and all claims—not the federal action that

omits some of his claims against Owners and all of his claims GEICO and Reinert.

Second, Owners argues that the state case should not go forward because Black added released parties (GEICO and Reinert) as Defendants to defeat federal diversity jurisdiction—a tactic known as 'fraudulent joinder'. But again, whether Black released all claims against GEICO and Reinert by signing the September 29 release depends in part on disputed facts. So Black had an interest in suing them, and GEICO and Reinert have an interest in defending themselves. Black committed no fraud by adding them as parties.

Third and finally, Owners contends that this court should defer to the first-filed case. But this is not the 11th Circuit's position: "That the action in state court was filed after the federal complaint, in anticipation of the motion to dismiss, is of no moment." *Triple S Ref. Corp. v. Mount Canaan Full Gospel Church*, 254 F. App'x 762, 763 (11th Cir. 2007) (upholding the district court's application of the nine-factor *Ameritas* test). Which is obviously the case, as the insurer in *Ameritas* filed its federal action 42 days before the insured filed his state court action. Yet the Eleventh Circuit affirmed the district court's decision to abstain.

* * *

Because federalism dictates that state courts, not federal courts, should decide this case, the court abstains from this action, including making any comments on Black's 12(b)(6) and Rule 19 arguments.

## CONCLUSION

For these reasons, the court will **DISMISS** this case **without prejudice**. The

court will enter a separate order that does so.

**DONE** on **June 22, 2021.**

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE